**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

| | |
|---|---|
| JOAQUIN DUARTE MEZA, ) | No. ED CV 16-1019-PLA |
| Plaintiff, ) | **MEMORANDUM OPINION AND ORDER** |
| v. ) | |
| NANCY BERRYHILL, ACTING ) COMMISSIONER OF SOCIAL ) SECURITY ADMINISTRATION, ) | |
| Defendant. ) | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on May 17, 2016, seeking review of the Commissioner's[1] denial of his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on June 15, 2016, and June 22, 2016. Pursuant to the Court's Order, the parties filed a Joint Stipulation (alternatively "JS") on May 2, 2017, that addresses their positions concerning the

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy Berryhill, the current Acting Commissioner of Social Security, is hereby substituted as the defendant herein.

disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

## II.

## **BACKGROUND**

Plaintiff was born on August 15, 1966. [Administrative Record ("AR") at 34, 145, 307, 314.] He has past relevant work experience as a farm labor worker and a landscape worker. [AR at 34, 57.]

On March 24, 2011, plaintiff protectively filed an application for a period of disability and DIB, and an application for SSI payments, alleging that he has been unable to work since January 21, 2008. [AR at 24, 307-13, 314-17.] After his applications were denied initially and upon reconsideration, plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ"). [AR at 171.] A hearing was held on November 1, 2012, at which time plaintiff appeared represented by an attorney, and testified on his own behalf with the aid of an interpreter. [AR at 64-88.] On November 16, 2012, the ALJ issued an unfavorable decision. [AR at 129-47.] The Appeals Council remanded the case with instructions on April 24, 2014. [AR at 152-56.] The remand hearing was held on November 13, 2014, at which time plaintiff appeared represented by an attorney, and testified on his own behalf with the aid of an interpreter. [AR at 44-63.] A vocational expert ("VE") also testified. [AR at 57-62.] On June 19, 2015, the ALJ issued a decision concluding that plaintiff was not under a disability from January 21, 2008, the alleged onset date, through June 19, 2015, the date of the decision. [AR at 23-36.] Plaintiff requested review of the ALJ's decision by the Appeals Council. [AR at 14-15.] When the Appeals Council denied plaintiff's request for review on March 21, 2016 [AR at 1-6], the ALJ's decision became the final decision of the Commissioner. See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (citations omitted). This action followed.

/

/

/

# III.

# STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1159 (9th Cir. 2008) (citation and internal quotation marks omitted); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998) (same). When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001) (citation omitted); see Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence.") (citation and internal quotation marks omitted). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Ryan, 528 F.3d at 1198 (citation and internal quotation marks omitted); see Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, [the reviewing court] may not substitute [its] judgment for that of the ALJ.") (citation omitted).

# IV.

# THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir.

1992).

## A. THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995), as amended April 9, 1996. In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. part 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that he is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. Id. The Commissioner then bears the burden of establishing that the claimant is not disabled, because he can perform other substantial gainful work available in the national economy. Id. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

## B. THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since

January 21, 2008, the alleged onset date.[2] [AR at 26.] At step two, the ALJ concluded that plaintiff has right knee derangement, status post arthroscopic surgery; degenerative disk disease of the lumbar spine; degenerative joint disease of the lumbar spine; right lumbar radiculopathy; cervicalgia; and radiculitis. [Id.] At step three, the ALJ determined that plaintiff does not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listing. [AR at 28.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[3] to perform light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b),[4] and can:

> [S]tand and walk for six hours in an eight-hour workday but no more than 20 to 30 minutes at a time; he can sit for six hours in an eight-hour work day with brief position changes after approximately 30 to 45 minutes; he can occasionally perform postural activities; he cannot climb ladders, ropes or scaffolds; he is to avoid jobs requiring unprotected heights, being around moving machinery, and being around other hazards; he is to avoid jobs requiring fast pace production or assembly line type work; he is limited to no repetitive or constant push and pull with the right lower extremities; and he is to avoid jobs requiring independent decision making or the responsibility for safety or direction of others.

[AR at 28-29.] At step four, based on plaintiff's RFC and the testimony of the VE, the ALJ concluded that plaintiff is unable to perform any of his past relevant work as a farm labor worker or landscape worker. [AR at 34.] She also found that plaintiff is not able to communicate in English. [AR at 34, 58.] At step five, based on plaintiff's RFC, vocational factors, and the VE's

---

[2] The ALJ concluded that plaintiff met the insured status requirements of the Social Security Act through September 30, 2011. [AR at 26.]

[3] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b), 416.967(b).

testimony, the ALJ found that there are jobs existing in significant numbers in the national economy that plaintiff can perform, including work as an "electronic worker" (Dictionary of Occupational Titles ("DOT") No. 726.687-010), "small product assembler" (DOT No. 706.684-022), and "hand packager" (DOT No. 920.587-018). [AR at 35, 59.] Accordingly, the ALJ determined that plaintiff was not disabled at any time from the alleged onset date of January 21, 2008, through June 19, 2015, the date of the decision. [AR at 36.]

**V.**

**THE ALJ'S DECISION**

Plaintiff contends that the ALJ erred when she: (1) failed to give specific and legitimate reasons for rejecting the opinions of plaintiff's treating physician, Herve Dumont, M.D.; and (2) accepted testimony from the VE that was in conflict with the Occupational Outlook Handbook ("OOH") and the O*NET. [JS at 6, 15.] As set forth below, the Court agrees with plaintiff, in part, and remands for further proceedings.

**A.    MEDICAL OPINIONS**

   **1.    Legal Standard**

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009); see also 20 C.F.R. §§ 404.1502, 404.1527. "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Lester, 81 F.3d at 830; Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014) (citing Ryan, 528 F.3d at 1198); Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1222 (9th Cir. 2010). "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830; Ryan, 528 F.3d at 1198.

"[T]he ALJ may only reject a treating or examining physician's uncontradicted medical opinion based on clear and convincing reasons." Carmickle, 533 F.3d at 1164 (citation and

internal quotation marks omitted); Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006). "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Carmickle, 533 F.3d at 1164 (citation and internal quotation marks omitted); Ryan, 528 F.3d at 1198; Ghanim v. Colvin, 763 F.3d 1154, 1160-61 (9th Cir. 2014); Garrison, 759 F.3d at 1012. The ALJ can meet the requisite specific and legitimate standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Reddick, 157 F.3d at 725. The ALJ "must set forth his own interpretations and explain why they, rather than the [treating or examining] doctors', are correct." Id.

### 2. Remand Order

The Appeals Council issued a remand order on April 24, 2014, directing the ALJ to give further consideration to the treating source opinions of Dr. Dumont pursuant to 20 C.F.R. §§ 404.1527 and 416.927 and Social Security Rulings ("SSR")[5] 96-2p and 96-5p. [AR at 154-56.] The Appeals Council also ordered the ALJ to obtain additional evidence concerning plaintiff's impairments in order to complete the administrative record; to further evaluate plaintiff's subjective complaints; to give further consideration to plaintiff's maximum RFC; to further evaluate plaintiff's ability to communicate in English; and, if warranted by the expanded record, to obtain supplemental evidence from a VE to clarify the effect of the assessed limitations on plaintiff's occupational base. [AR at 155-56.]

### 3. Dr. Dumont's Opinions

In connection with plaintiff's workers' compensation claim, Dr. Dumont saw plaintiff once a month from June to December 2009 for his complaints of lower back and right knee pain. [AR

---

[5] "SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." Holohan v. Massanari, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001) (citations omitted).

at 436-39, 495-530.] Dr. Dumont diagnosed plaintiff with lumbar disc bulge, radiculopathy L/S region, discogenic disease, rotator cuff tear, pain in the low back/lumbar region, and degenerative lumbar disc disease. [AR at 496, 498, 500.] He opined that plaintiff could only return to work with modified duty and the following restrictions: no standing or sitting longer than 20 minutes with the ability to sit or stand at will; limited walking; limited climbing, bending, stooping, squatting, and kneeling; no ladders or stairs; and no lifting over 10 pounds. [AR at 496-526].

On remand, the ALJ discounted Dr. Dumont's opinions as follows:

> These opinions are given little weight because they are inconsistent with records reflecting that [plaintiff's] straight leg raise test was negative, and his range of motion of the lumbar spine was mildly limited. Furthermore, these opinions are inconsistent with [plaintiff's] MRI scan of the lumbar spine, which revealed no more than mild to moderate central canal stenosis, moderate facet arthropathy, and mild central canal narrowing.

[AR at 33 (citations omitted).] She also stated that "the credibility and relevance of the opinions [of plaintiff's workers' compensation physicians] must be carefully assessed because of the involvement with the workers' compensation claim," and that such physicians "are often biased and do not provide truly objective opinions." [AR at 31.]

For the following reasons, the Court finds that reasons given by the ALJ for discounting Dr. Dumont's opinions were not specific and legitimate reasons supported by substantial evidence.

### 4. Lack of Objective Findings

Although an ALJ is not required to accept a medical opinion that is conclusory and inadequately supported by medical findings (see Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992) (ALJ may discount the conclusory opinion of an examining or treating physician if the opinion is unsupported by clinical findings)), lack of objective findings, without more, is insufficient to constitute a specific and legitimate reason for rejecting the opinion of an examining physician.[6]

---

[6] Objective medical evidence means "medical signs" and "laboratory findings" as defined in 20 C.F.R. §§ 404.1528(b), (c) and 416.928(b), (c). See 20 C.F.R. §§ 404.1529(a), 416.929(a). Signs are anatomical, physiological, or psychological abnormalities which can be observed, apart from a claimant's symptoms. 20 C.F.R. §§ 404.1528(b), 416.928(b). Laboratory findings are
(continued...)

See Embrey v. Bowen, 849 F.2d 418, 421-23 (9th Cir. 1988) ("To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim.") (footnote omitted).

### a. Negative Straight Leg Raise Test

Plaintiff contends that the ALJ improperly isolated a portion of the record by pointing to one negative SLR to discount Dr. Dumont's opinions. [JS at 9.] The Court agrees.

The one record reflecting a negative SLR repeatedly relied on by the ALJ, is a December 16, 2008, report by treating physician, Jacob Rabinovich, M.D.[7] [AR at 485.] However, although Dr. Rabinovich noted a negative SLR in that report, he also noted tenderness in the sacroiliac area and limited range of motion (alternatively "ROM") of the lumbar spine. [Id.] In addition, he found plaintiff to be temporarily totally disabled. [Id.] Furthermore, the negative SLR reported by Dr. Rabinovich was in 2008, but Dr. Rabinovich -- who treated plaintiff throughout 2009 and again in 2013 -- observed a *positive* SLR every time he conducted the test after 2008.[8] [See AR at 480, 481, 671, 688, 695.] Additionally, this one record reflecting a negative SLR is in direct conflict with a significant number of records that reflect a positive SLR found by several other physicians. For instance:

---

[6](...continued)
anatomical, physiological, or psychological phenomena which can be shown by the use of medically acceptable laboratory diagnostic techniques. [Id.]

[7] Although the ALJ also referred to a July 21, 2011, report she claimed reflected a negative SLR [AR at 31 (citing AR at 579)], that report actually appears to reflect a *positive* straight leg raise test bilaterally, both seated and supine. [AR at 579 (noting seated SLR results bilaterally at 50 degrees; and supine SLR results at 60 degrees (right) and 70 degrees (left), in contrast with the otherwise *expected* "negative" result).]

[8] Notwithstanding her *reliance* on Dr. Rabinovich's December 16, 2008, record, the ALJ also *rejected* Dr. Rabinovich's finding in that same report [AR at 486] that plaintiff was temporarily totally disabled because that opinion was offered in the workers' compensation context. [AR at 33-34; see Discussion infra Part V.A.5.]

9

- June 4, 2009: positive SLR, bilaterally seated and supine [AR at 523];
- June 17, 2009: positive SLR, bilaterally [AR at 492];
- July 10, 2009: positive SLR, bilaterally [AR at 516];
- August 14, 2009: positive SLR, bilaterally [AR at 509];
- September 23, 2009: positive SLR, bilaterally [AR at 503];
- December 18, 2009: positive SLR on the right, seated and supine [AR at 496];
- February 24, 2010: positive SLR, bilaterally [AR at 536];
- March 29, 2010: positive SLR on the right [AR at 533];
- May 21, 2010: positive SLR on the right [AR at 531];
- September 9, 2010: positive SLR on the right, seated [AR at 572];[9]
- October 21, 2010: positive SLR on the right, seated [AR at 565];
- June 2, 2011: positive SLR on the right, seated [AR at 560];
- July 14, 2011: positive SLR on the right, seated [AR at 550];
- July 21, 2011: positive SLR, bilaterally seated and supine [AR at 579];
- August 12, 2014: positive SLR, bilaterally [AR at 866];
- August 18, 2014: positive SLR on the right [AR at 874.]

Although the ALJ acknowledged some of these records [see AR at 31 (citing AR 480, 509, 511, 513, 516, 518, 523, 874)], she nevertheless relied on the older December 16, 2008, negative SLR to support her findings and to discount Dr. Dumont's opinions.[10]

An ALJ may not cherry-pick evidence to support the conclusion that a claimant is not disabled, but must consider the evidence as a whole in making a reasoned disability determination. Holohan v. Massanari, 246 F.3d 1195, 1207 (9th Cir. 2001) (concluding that the ALJ's basis for rejecting the treating physician's medical opinion was not supported by substantial

---

[9] Some of the records use the phrase "sitting root test" as opposed to "seated SLR." They appear to be alternate names for the same test.

[10] Similarly, the ALJ cited a medical record by Randy Rosen, M.D. -- in fact, the same record that she mistakenly stated showed a negative SLR but which actually reflected a positive SLR [see supra note 7] -- to show that plaintiff's range of motion of the lumbar spine is only mildly limited. [AR at 579.]

evidence because the ALJ "selectively relied on some entries . . . and ignored the many others that indicated continued, severe impairment").

In light of the record as a whole with respect to plaintiff's SLR testing, the one negative record relied on by the ALJ to support her rejection of Dr. Dumont's opinions did not constitute substantial evidence. Accordingly, this was not a specific and legitimate reason supported by substantial evidence for discounting the treating physician's opinions.

### b. Mildly Limited Range of Motion and the MRI Findings

The ALJ conclusorily stated that Dr. Dumont's opinions were inconsistent with records reflecting that plaintiff's ROM of the lumbar spine was mildly limited, and with plaintiff's May 8, 2014, MRI scan of the lumbar spine reflecting mild to moderate central canal stenosis, moderate facet arthropathy, and mild central canal narrowing. [AR at 33 (citing AR at 579, 725).] The ALJ fails to explain, however, *how* the treating physician's opinions regarding plaintiff's limitations are inconsistent (if they are) with the MRI results or with a mildly limited ROM. It is improper for an ALJ to substitute her own opinion for that of a medical professional who examined plaintiff regularly for months. See Tackett v. Apfel, 180 F.3d 1094, 1102-03 (9th Cir. 1999) (ALJ may not substitute her own interpretation of the medical evidence for the opinion of medical professionals); Banks v. Barnhart, 434 F. Supp. 2d 800, 805 (C.D. Cal. 2006) ("An ALJ cannot arbitrarily substitute [her] own judgment for competent medical opinion, and [s]he must not succumb to the temptation to play doctor and make [her] own independent medical findings.") (internal quotation marks, alterations, and citations omitted).

Based on the foregoing, this was not a specific and legitimate reason supported by substantial evidence for rejecting Dr. Dumont's opinions.

### 5. Workers' Compensation Records

The ALJ discounted the medical records prepared by Dr. Dumont because they were

prepared in connection with plaintiff's workers' compensation claim.[11] [See AR at 31.] Specifically, she noted that the medical records were prepared "in the context of the adversarial workers' compensation claim system" and that physicians in that context "often serve[] as an advocate for the claimant and describe[] excessive limitations to enhance the claimant's financial recovery." [Id.] The ALJ stated that, as a result, "the credibility and relevance of the opinions of these physicians must be carefully assessed because of the involvement with the workers' compensation claim."[12] [Id.]

An ALJ "may not disregard a . . . medical opinion simply because it was initially elicited in a state workers' compensation proceeding . . . ." Booth v. Barnhart, 181 F. Supp. 2d 1099, 1105 (C.D. Cal. 2002). Instead, an ALJ must evaluate the medical records prepared in the context of workers' compensation in the same way she would evaluate records obtained otherwise. Id. (citing Coria v. Heckler, 750 F.2d 245, 248 (3d Cir. 1984)) ("[T]he ALJ should evaluate the objective medical findings set forth in the medical reports for submission with the workers' compensation claim by the same standards that s/he uses to evaluate medical findings in reports made in the first instance for the Social Security claim"). Further, an ALJ is not entitled to reject a medical opinion based "on the purpose for which medical reports are obtained." Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1200 n.5 (9th Cir. 2004) (citing Lester, 81 F.3d at 830). Here, the ALJ did not provide any evidence that Dr. Dumont or *any* of plaintiff's workers' compensation physicians was anything but an unbiased professional in conducting their examinations and writing their reports.

Defendant argues that Dr. Dumont never opined that the limitations were permanent rather than temporary, as plaintiff healed and responded to treatment. [JS at 12.] Defendant points out

---

[11] While the ALJ does not name Dr. Dumont specifically, she cites to his medical records, among others, when discussing the potential bias of doctors within the workers' compensation system. [AR at 31.]

[12] Plaintiff did not specifically raise this reasoning as error in the JS. However, he did argue that the ALJ failed to adequately consider Dr. Dumont's opinions. Because the fact that certain medical records were prepared for workers' compensation purposes was among the reasons the ALJ used to discount Dr. Dumont's opinions, the Court will address it here.

12

that on multiple occasions, Dr. Dumont opined that plaintiff could return to work with modified work duty and such limitations as "no lifting over 10 pounds, limited standing or walking, limited bending, stooping, kneeling, squatting, and no climbing ladders or stairs." [Id. (citing AR at 496, 499, 504, 741, 742-43).] However, this was not a reason given by the ALJ for discounting Dr. Dumont's opinions and "[l]ong-standing principles of administrative law require [this Court] to review the ALJ's decision based on the reasoning and factual findings offered *by the ALJ* -- not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." Bray v. Astrue, 554 F.3d 1219, 1225-26 (9th Cir. 2009) (emphasis added, citation omitted); Pinto v. Massanari, 249 F.3d 840, 847 (9th Cir. 2001) ("[W]e cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision.").

In any event, the Court finds this argument unconvincing. Dr. Dumont never opined as to whether the restrictions were permanent or temporary. He simply stated that those were the restrictions in place until the next scheduled appointment. Given that the restrictions were renewed after every appointment for the entire time plaintiff was under Dr. Dumont's care, the opposite inference could also be drawn: that the restrictions were permanent because plaintiff was not improving.

Accordingly, this was not a specific and legitimate reason for discounting Dr. Dumont's opinions.

**B.   THE OOH AND O*NET**

   **1.   Legal Standard for VE Testimony**

Once it is established that a claimant is unable to return to his or her past relevant work, the burden shifts to the Commissioner to identify other jobs that the claimant is capable of performing. Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990). In doing so, the Commissioner must take into account the claimant's RFC, age, education, and last fifteen years of work experience. Id. In determining whether appropriate jobs exist for a claimant, the ALJ may rely on VE testimony. See 20 C.F.R. §§ 404.1566, 416.966 ("If the issue in determining whether you are disabled is whether your work skills can be used in other work and the specific occupations in

which they can be used, or there is a similarly complex issue, we may use the services of a vocational expert or other specialist."). See also Massachi, 486 F.3d at 1153 (noting that the Social Security Administration uses VE testimony in making disability determinations).

The VE will generally refer to the DOT. See Light v. Social Sec. Admin., 119 F.3d 789, 793 (9th Cir. 1997). The DOT is usually "the best source for how a job is generally performed." Pinto, 249 F.3d at 845. SSR 00-4p explicitly requires that the ALJ determine whether the VE's testimony deviates from the DOT, and whether there is a reasonable explanation for any deviation. See SSR 00-4p (stating that an ALJ must inquire whether a VE's testimony regarding "the requirements of a job or occupation" conflicts with the DOT). Only after determining whether the testimony of the VE has deviated from the DOT, and whether any deviation is reasonable, can an ALJ properly rely on the VE's testimony as substantial evidence to support a disability determination. Massachi, 486 F.3d at 1152-54.

Here, the ALJ relied on the testimony of the VE to conclude that plaintiff is not disabled because plaintiff can perform other work that exists in significant numbers in the national economy. [AR at 36.] Specifically, the ALJ determined that, given plaintiff's marginal education, inability to speak English fluently, work experience, and RFC, he can perform work as an "electronic worker" (DOT No. 726.687-010), "small product assembler" (DOT No. 706.684-022), and "hand packager" (DOT No. 920.587-018). [AR at 35.] The ALJ also determined that the VE's testimony was consistent with the information contained in the DOT. [Id.]

For the following reasons, the Court finds that the ALJ did not err in accepting the VE's testimony.

### 2. The Occupational Outlook Handbook and O*NET

Plaintiff contends that the ALJ erred when she accepted testimony from the VE that conflicted with the OOH, and the ALJ did not resolve the conflict. Specifically, according to plaintiff, the OOH describes the occupations of "electronic worker" and "small product assembler" as requiring a high school diploma, plaintiff has only a sixth grade education and, as a result, he is unable to perform the work identified by the VE. Furthermore, plaintiff states that he cannot

meet the physical demands required for a "hand packager" as described in the OOH and the O*NET.[13]

The Commissioner takes administrative notice of the OOH pursuant to 20 C.F.R. §§ 404.1566(d)(5), 416.966(d)(5), as one of "various governmental and other publications" -- which also includes the DOT -- considered to be a reliable source. Plaintiff contends that the OOH and the DOT, therefore, stand on the "same footing" and the ALJ has an obligation to "resolve any [facial] conflict between [VE] testimony" and the OOH. [JS at 19.] However, as defendant points out, there is no precedent or regulation to support this proposition. [JS at 19-20.] SSR 00-4p states that adjudicators must "[i]dentify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs . . . and information in the [DOT], including its companion publication, the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (SCO) . . . ." SSR 00-4p. Thus, the ruling specifically identifies only the DOT and one specific companion publication, the SCO -- there is no mention of the OOH or O*NET. In fact, plaintiff's argument that the DOT and the OOH should be on "equal footing" has been rejected by a number of district courts in the Ninth Circuit. Walker v. Berryhill, 2017 WL 1097171, at *3 (C.D. Cal. Mar. 23, 2017) (citing cases).

Moreover, the case law cited by plaintiff discusses the ALJ's need to resolve conflicts with the *DOT*, not sources of administrative notice in general. [See JS at 19 (citing Terry, 903 F.2d at 1278 (noting the lack of explanation for a conflict between the job description accepted by the ALJ and the DOT); Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995) (noting that the presumption of job description raised by the DOT is rebuttable)).] Indeed, "the Commissioner and the Ninth Circuit have long recognized the primacy of the DOT." Walker, 2017 WL 1097171, at *4 (citations omitted). For example, in a case with similar facts, the plaintiff argued that the ALJ erred because, according to the OOH, all three jobs the ALJ found the plaintiff capable of performing required a high school diploma and the plaintiff only had a ninth grade education.

---

[13] The O*NET is an online database of occupational information sponsored by the U.S. Department of Labor.

Palomino v. Colvin, 2015 WL 2409881, at *5 (C.D. Cal. May 20, 2015). The court rejected the plaintiff's argument on the ground that there was no authority stating that the ALJ is bound by the OOH. Id. at *6. In addition, the court in Palamino noted that although the DOT is recognized as authority that raises a rebuttable presumption as to job classifications, the plaintiff did not argue that his education level conflicted with the *DOT* for the jobs identified. Id.; see also Walker, 2017 WL 1097171, at *4 (finding that the ALJ did not err by failing to inquire into conflicts between the VE's testimony and the OOH); Simpson v. Colvin, 2016 WL 3091487, at *5 (C.D. Cal. May 31, 2016) (finding no error where the VE's job numbers were inconsistent with information from the Bureau of Labor statistics in the OOH because a VE may rely on any number of sources). Here, as in Palomino, plaintiff does not contest that his education level or physical abilities are inconsistent with the occupations of "electronic worker," "small product assembler,"[14] and "hand packager"[15] jobs as defined by the DOT. The ALJ met the requirement of inquiring as to any conflicts with the DOT and received an explanation for the one conflict raised by the VE. [AR at 35, 59.] The ALJ was not required to resolve any conflicts with the OOH or O*NET.

Remand is not warranted on this issue.

/

/

---

[14] Indeed, even the OOH states that the "*typical* entry-level education" for assemblers and fabricators -- the group that encompasses the occupations of electronic worker and small product assembler [see JS at 16-17] -- is high school diploma or equivalent. Bureau of Labor Statistics, U.S. Department of Labor, OOH, 2016-17 Ed., Assemblers and Fabricators, available at https://www.bls.gov/ ooh/production/assemblers-and-fabricators.htm (last visited July 23, 2017) (emphasis added). It does not state that a high school diploma is *required*. See George v. Berryhill, 2017 WL 1709599, at *14 (C.D. Cal. Apr. 30, 2017) (noting that the OOH and the O*NET descriptions describing an occupation as "usual[ly]" or "typical[ly]" requiring a high school diploma allow for less education). Here, the ALJ directed the VE to take plaintiff's "marginal" education into account. [AR at 48, 55.]

[15] Plaintiff's argument that he cannot meet the physical demands of the job as a hand packager according to the OOH also fails. He cites to the O*NET for the proposition that a hand packager stands 92% of the time. [JS at 18.] For the same reasons discussed herein with respect to the OOH, the ALJ is not required to resolve conflicts between VE testimony and the O*NET. Willis v. Astrue, 2009 WL 1120027, at *3 (W.D. Wash. Apr. 24, 2009) (finding no error when the ALJ did not resolve conflict between the O*NET and VE testimony).

# VI.

# REMAND FOR FURTHER PROCEEDINGS

The Court has discretion to remand or reverse and award benefits. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. See Lingenfelter v. Astrue, 504 F.3d 1028, 1041 (9th Cir. 2007); Benecke v. Barnhart, 379 F.3d 587, 595-96 (9th Cir. 2004). Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. See Benecke, 379 F.3d at 593-96.

In this case, there is an outstanding issue that must be resolved before a final determination can be made. In an effort to expedite these proceedings and to avoid any confusion or misunderstanding as to what the Court intends, the Court will set forth the scope of the remand proceedings. First, because the ALJ failed to provide specific and legitimate reasons for discounting Dr. Dumont's opinions, the ALJ on remand shall reassess the entirety of the medical evidence. In assessing the medical opinion evidence of all the doctors, the ALJ must explain the weight afforded to each opinion and provide legally adequate reasons for any portion of the opinion that the ALJ discounts or rejects, including a legally sufficient explanation for crediting one doctor's opinion over any of the others. Second, the ALJ shall reassess plaintiff's RFC and determine, at step five, with the assistance of a VE if necessary, whether there are jobs existing in significant numbers in the national economy that plaintiff can still perform.[16]

/
/
/
/

---

[16] Nothing herein is intended to disrupt the ALJ's step four finding that plaintiff is unable to return to his past relevant work.

## VII.
## CONCLUSION

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: August 2, 2017

/s/ Paul L. Abrams
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE